IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| ANGELICA RASCON | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:21-cv-68 |
| | § | |
| PERRYTON ISD; JAMES MIRELES; | § | |
| READ CATES; AND | § | |
| MARIA GOMEZ-ROCQUE | § | |
| | § | |
| Defendants. | § | |

## COMPLAINT

Plaintiff Angelica Rascon complains of Defendants Perryton ISD, James Mireles, Read Cates, and Dr. Maria Gomez-Rocque as follows:

## NATURE OF THE CASE

1. Angelica Rascon, an employee of Perryton ISD, has been the victim of discrimination and retaliation as a result of actions she has taken to protect the rights of students with disabilities within the school district. She files this lawsuit to redress these violations of federal law, to enjoin further discrimination against her, and to protect the rights of the students she serves.

## PARTIES

2. Plaintiff Angelica Rascon (hereinafter "Rascon"), is a citizen of the United States, residing in Ochiltree County in the State of Texas.

3. Defendant Perryton Independent School District (hereinafter "PISD") is a recipient of federal funds subject to §504 of the Rehabilitation Act and a government entity authorized under the laws of Texas. The Perryton Independent School District Office is located at 821 S.W. 17th Ave., Perryton, Texas 79070.  Pursuant to §17.024 of the Texas Civil Practice

and Remedies Code, in a suit against a school district, citation may be served on the president of the school board or on the superintendent. Therefore, PISD may be served with process by serving James Mireles as district superintendent of PISD at 2110 S. Jefferson St., Apt. 308, Jefferson Park Apartments, Perryton, Texas 79070, or wherever he may be found.

4. Defendant James Mireles (hereinafter "Mireles") is employed as district superintendent of PISD, and was the immediate supervisor of Rascon and the direct supervisor of Dr. Maria Gomez-Rocque and Read Cates. Mr. Mireles may be personally served with citation at 2110 S. Jefferson St., Apt. 308, Jefferson Park Apartments, Perryton, Texas 79070, or wherever he may be found.

5. Defendant Read Cates (hereinafter "Cates") is employed as the Williams Intermediate Principal for PISD, in Texas, and supervised by Mireles. Mr. Cates is a resident of Beaver, Oklahoma and may be personally served with citation at the Clear Creek Ranch, HC 3, Box 33; RR 4, Box 33; 25999 N. State Highway 23, Beaver, Oklahoma 73932; or wherever he may be found.

6. Defendant Dr. Maria Gomez-Rocque (hereinafter "Rocque") is employed as the assistant superintendent by PISD and supervised by Mireles. Dr. Rocque may be personally served with citation at 1710 S. Fordham St., Perryton, Texas 79070.

## JURISDICTION & VENUE

7. This court has jurisdiction pursuant to 28 U.S.C. § 1331 and 1343 because the matters in controversy arise under the Constitution and laws of the United States.

8. Under 28 U.S.C. § 1391, venue is proper before this Court because the events and omissions giving rise to the plaintiff's claims occurred in the Northern District of Texas, Amarillo division.

## FACTUAL BACKGROUND

9. On February 15, 2018, special education teacher Samantha Latham ("Latham"), for whom Rascon was a mentor, reported an incident to Rascon in which Cates placed his hands on a student, who experiences disabilities, and maneuvered the student by his ankles down the hallway to return him to Latham's classroom. By law, Rascon was required to inform her campus principal and Perryton ISD SSA Special Education Director. Rascon's campus principal contacted interim superintendent Robin Fulce who advised that Rascon should inform Latham to submit an incident report to Child Protective Services. The next day, Cates and two other special education staff members were placed on administrative leave.

10. On February 20, 2018, Rascon made a statement at a PISD board meeting in which she referenced the February 15th incident, explaining that what had occurred was misconduct requiring an investigation, in order to "do what is right for our students." She explained that she believed the incident required further investigation under Senate Bill 7.

11. On April 5, 2018, Cates returned to the Williams campus, after it was determined by Child Protective Services that it was unclear what had happened. Cates participated in a celebration parade around the campus posting it live on Facebook. The district communications Director had the video removed from the Williams Facebook page.

12. Since Cates returned from administrative leave he has made it clear that he holds a grudge against Rascon and Latham for their roles in reporting the incident of February 15, 2018.

13. On June of 2019, Rascon was recommended by the Wright Elementary campus principal Tiffany Bietz and superintendent Dr. Tim Little for the position of assistant principal at Wright Elementary School. The school board denied the recommendation, that Rascon become assistant principal, referring to her role in the February 15, 2018 incident.

14. In October of 2019, Cates reported to Superintendent Dr. Tim Little that Rascon was using the PISD printer to print documents for personal use. The printer had been purchased by and belongs to Rascon.

15. Also in October of 2019, after Rascon offered to train staff at the Williams campus on the use of a communication device and app used by students with disabilities, Special Education Director Mary Nine informed Rascon that certain teachers and paraprofessionals at the Williams campus did not want to work with Rascon. Over the next year, the administration and many of the staff at the Williams campus were consistently hostile toward Rascon. Cates began refusing to permit Rascon to service students with disabilities at the Williams campus.

16. On October 21, 2020, as part of conducting a needs assessment for the Wright and Williams campuses as directed by Rocque, Rascon learned that a student at the Williams campus, with whom she had previously worked with, might be returning to the Williams campus after virtual learning (implemented due to the Covid pandemic) had ended. Via text messages, Rascon asked the student's parent whether he would be returning. Because of the nature of the student's disability. Rascon believed that it was in the student's best interest to return to campus. Having evaluated and serviced the student in the past, Rascon knew that the structure and consistency in his routine found on campus would be critical to the student's success. However, Cates did not want the student to return because of the student's challenging behaviors. The next day, Cates reported false information to Mireles and Rocque that Rascon had visited the student's house and convinced the parent to send the student back to school. Cates accused Rascon of breaching confidentiality.

17. On October 26, 2020, Rascon was reprimanded by Rocque and Mireles for this alleged breach of confidentiality. Rascon explained that she was a part of the student's IEP plan,

Case 2:21-cv-00068-Z   Document 1   Filed 04/13/21   Page 5 of 10   PageID 5

participated in his annual ARD meeting, and that she was responsible for his transition plan. Her communication with the student's parent was in no way a breach of confidentiality, which was confirmed by Roque and Mireles, as well as Mary Nine. Even so, Rocque and Mireles explained to Rascon that there would now be a protocol by which Rascon must get written consent from the campus principals in order to provide services to students with disabilities or other related services at their campuses. Roque and Mireles also informed Rascon that she did not have permission to collaborate with her colleagues or parents regarding any student on the Williams campus unless given permission by Cates. No other instructional coaches are subject to these restrictions and requirements.

18.     On October 27, 2020, when Cates walked by Rascon's cubicle, she attempted to apologize for having upset him. In response, Cates again accused Rascon of breaching confidentiality, indicated that he would be reporting her to the Texas Education Association, and that she would lose her teaching certificate.

19.     Rascon advised Rocque of the confrontation with Cates and expressed concern about Cates's preference that the student not be permitted to return to campus in light of the success that had been achieved up to that point, on campus, in addressing the student's behavioral issues. Rascon explained that it was not in the student's best interest for him to be homebound, regardless of what Cates preferred. Rocque stated it was Cates's campus.

20.     In a subsequent meeting with Roque, Rascon expressed concern that she was being prohibited from providing services to students with disabilities at the Williams campus with whom she had worked for the past three years and where she was a member of the Individualized Education Plan team. Rascon expressed concerns that Cates's retaliatory and

COMPLAINT                                                                                              5

unprofessional position was resulting in the denial of special education services to those students, to their detriment.

21.     On November 2, 2020, Rascon met with Rocque, Mireles, Cates, and a special education teacher. Cates stated that as far as he was concerned, Rascon was no longer part of special education. He again accused her of breaching confidentiality by contacting the student's parent. Concerning the student who Cates did not want to return to campus, he stated that they "had a plan" and could not control him if the student were to return. In the same meeting, Rascon explained that another student who had been in virtual learning due to the Covid closure was not eligible for homebound services and that in-person learning would be in that student's best interest as well. Rascon also raised concerns that having students be homebound who were not eligible raised compliance issues.

22.     On February 22, 2021, Rocque and Mireles met with Rascon to tell her they believed she had been ineffective in her role as the behavioral specialist for the District during the year. Rascon disagreed, pointing out that she can hardly be expected to be effective in her job when she was being prohibited from providing services to students who needed them. Mireles explained that Cates would be overseeing two additional campuses next year and that Rascon would not be allowed to service those campuses either. At the conclusion of the meeting, Rocque and Mireles indicated that Rascon's contract would not be extended or renewed at the board meeting. However, at the end of her contract in May 2022, this could be revisited based on her ability to mend relationships. This could lead to her being reassigned to the classroom or leaving the district. Rascon was told that her contract would be discussed by the school board in the next day's session; but when asked if she could visit with the Board, Mireles said it was too late to be added to the agenda.

23. On March 3, 2021, Rascon, through her attorney, gave written notice to PISD that it appeared Rascon had been subjected to discrimination in violation of applicable federal law after opposing various unlawful acts or practices. Since receipt of this correspondence, Rocque has eliminated all collaboration and in-person communication with Rascon, instead sending directives via email and disregarding previously scheduled events Rascon was to attend. After receiving zero directives from August 2020 through March 3, 2021 to service students at the Williams campus, Rascon has now received three such directives, all disregarding the protocols Rocque had previously imposed.

24. Rocque and Mireles have added to Rascon's responsibilities such that she is essentially performing two full-time positions. Rascon has explained to Rocque and Mireles that she cannot continue to work the hours necessary to complete all of the additional work they have given her since receiving a letter from her lawyer.

## CAUSE OF ACTION

## COUNT ONE – Violation of § 504 of Rehabilitation Act

25. Rascon incorporates by reference all of the above related paragraphs as if set forth herein.

26. Section 504 incorporates the anti-retaliation provision of Title VII of the Civil Rights Act of 1964, providing in relevant part that "the remedies, procedures, and rights set forth in Title VII . . . shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance . . . ." 29 U.S.C. § 794(a)(2).

27. Students with disabilities serviced by Rascon, including those at the Williams campus, were and are the beneficiaries of federal funding subject to Section 504, and Rascon was within the zone of interest of the Act's requirements for the benefit of such students.

28. The anti-retaliation provision of Title VII incorporated into § 504 prohibits intimidation, threats, coercion, or discrimination "against any individual for the purpose of interfering with any right or privilege secured by" the Civil Rights Act "or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this part." 34 C.F.R. § 100.7(e).

### COUNT TWO - Title II of the Americans With Disabilities Act

29. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132.

30. The Act contains an anti-retaliation clause providing that "[n]o private or public entity shall discriminate against any individual because that individual has opposed any act or practice made unlawful by this part . . ." and making it unlawful for any such entity to "coerce, intimidate, threaten, or interfere with any individual . . . on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the Act or this part." 28 C.F.R. § 35.134.

31. Rascon has repeatedly and consistently advocated for the rights of students with disabilities and opposed violations of those students' rights caused primarily by the acts and omissions of Cates in refusing to put the best interest of the student first.

32. In doing so, Rascon has engaged in protected activity under both Section 504 and Title II of the ADA.

33. Rascon suffered adverse actions as a result of her engaging in such protected activity including, but not limited to:

   a. exclusion from working with the very students she was hired to serve and collaboration with her colleagues in order to provide those services;

   b. imposition of restrictions and requirements prior to servicing students with disabilities that are not imposed on any other instructional coach, including the requirement to obtain written consent before servicing a student at certain campuses;

   c. denial of the assistant principal position at Wright Elementary;

   d. false accusations by Cates that she was using school property for personal use and that she breached student confidentiality;

   e. threats by Cates that Rascon would be reported to the Texas Education Association and lose her teaching certification;

   f. threats that Rascon's contract would be amended to exclude her role as behavioral specialist, would not be renewed and/or that she would be reassigned to an undesirable position within the district; and

   g. since the time PISD received notification that Rascon retained counsel, unlawful discrimination and/or retaliation and imposition of additional work directives that cannot reasonably be accomplished.

## PROXIMATE CAUSE

34. Plaintiff incorporates by reference all of the above related paragraphs as if set forth herein.

35. Each and every, all and singular, of the foregoing acts and omissions, on the part of the defendants, taken separately and/or collectively, jointly and severally, constitute a direct and proximate cause of the injuries and damages set forth herein.

## RELIEF SOUGHT

36. As a direct and proximate result of the Defendants' conduct, Plaintiff suffered injuries and damages for which she is entitled to recover, including but not limited to:

   a. loss of educational and/or employment opportunities;

   b. mental anguish in the past;

  c. mental anguish in the future; and

  d. punitive damages.

37. Plaintiff also seeks injunctive relief to prohibit continued and further violations as described herein.

## DEMAND FOR A JURY TRIAL

38. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a jury trial for all issues in this matter.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays for judgment against the Defendants in the manner and particulars noted above, and in an amount sufficient to fully compensate her for the elements of damages enumerated above, judgment for damages, recovery of attorney's fees and costs for the preparation of trial of this cause of action and for appeal if required, together with pre- and post-judgment interest and costs expended herein, and for such other relief as the court in equity, deems just and proper.

    Respectfully submitted,

    **YOUNG FIRM PC**
    Jeremi K. Young, TX SBN 24013793
    Audrey Sirmon, TX SBN 24110369
    1001 S. Harrison, Suite 200
    Amarillo, Texas 79101
    Tel: (806) 331-1800; Fax: (806) 398-9095
    Email: jyoung@youngfirm.com
       audrey@youngfirm.com

    By: */s/ Jeremi K. Young*
      Jeremi K. Young

    **ATTORNEYS FOR PLAINTIFF**