IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION



| | § | |
|---|---|---|
| ANGELICA RASCON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:21-CV-068-Z-BR |
| | § | |
| PERRYTON INDEPENDENT SCHOOL DISTRICT, *et al.*, | § | |
| | § | |
| Defendants. | § | |

# MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion for Summary Judgment ("Motion") (ECF No. 41), filed on May 13, 2022. Having considered the Motion, pleadings, and relevant law, the Court **GRANTS** the Motion and renders summary judgment in Defendants' favor on all claims.

**BACKGROUND**

Defendant Perryton Independent School District ("Perryton ISD") employed Plaintiff Angelica Rascon ("Plaintiff") for nine years as a teacher and behavior coordinator at multiple schools. ECF No. 42 at 9. During the 2017–18 school year, Plaintiff worked as a special education teacher at Wright Elementary School and served as a mentor to Samantha Latham, a teacher at Williams Intermediate School. *Id.* at 10.

In early February 2018, Latham reported Defendant Read Cates — principal of Williams Intermediate School — to the Texas Department of Family and Protective Services ("DFPS") for "improper conduct." *Id.* Plaintiff advised Latham to file said report. *Id.* But Plaintiff did not witness the reported event or make her own report. *Id.* Nor was Plaintiff interviewed for the DFPS investigation into the incident. *Id.* Neither Defendant Perryton ISD nor DFPS initiated disciplinary action against Defendant Cates. *Id.*

During the 2018–19 school year, Plaintiff served as a campus behavior specialist at Wright Elementary School. *Id.* In June 2019, the principal of Wright Elementary School recommended Plaintiff for the position of assistant principal. *Id.* However, Plaintiff previously failed the requisite Texas principal certification exam five times and was therefore ineligible. *Id.* Defendant Perryton ISD ultimately decided not to fill the assistant principal position for the 2019–20 school year in order to recover from a two-year budget deficit. *Id.* at 10–11. Accordingly, Plaintiff continued to serve Wright Elementary School as a campus behavior coordinator during the 2019–20 school year. *Id.* at 10.

In October 2019, an unnamed teacher reported to Defendant Cates that Plaintiff was using a Perryton ISD printer "to print materials for a business that Plaintiff ran outside of her school responsibilities." *Id.* at 11. Because Defendant Cates was neither Plaintiff's supervisor nor assigned to Plaintiff's campus, he forwarded the teacher's report to Defendant Perryton ISD's then-serving superintendent. *Id.* Although Plaintiff originally alleged she used a printer she had purchased herself and that Defendant Cates' report was made in retaliation, Plaintiff has since conceded her initial allegations were untrue. *Id.* In fact, Plaintiff printed documents for her personal business on the school's computer for which the school did not seek reimbursement. *Id.*

During the summer of 2020, Defendant Perryton ISD hired Defendant James Mireles as superintendent and Defendant Maria Gomez-Rocque as assistant superintendent. *Id.* For the 2020–21 school year, Defendant Perryton ISD promoted Plaintiff to a new, two-year contracted central administration position as the district's instructional and behavior support services coordinator. *Id.* In this new role, Plaintiff would be responsible for "coordinating instructional support programs and behavior services for general and special education students in Pre-Kindergarten through 12th grade." *Id.* at 12. As the district behavior support services coordinator, Plaintiff was tasked with

training, modeling, and supporting district staff in implementing appropriate student services. *Id.* Plaintiff's new position required her to complete a needs assessment for special education staffing at Defendant Perryton ISD's campuses. *Id.* For the assessment, Plaintiff would compare the number of special needs students to special education staff at each campus to determine whether staffing levels required adjustments. *Id.*

In October 2020 — while performing the needs assessment — Plaintiff discovered confidential information about a Williams Intermediate student who Plaintiff previously taught at Wright Elementary. *Id.* Plaintiff contacted the student's parents without informing Williams Intermediate staff. *Id.* Defendant Cates characterized this action as a "breach of confidentiality" because he believed it was inappropriate for Plaintiff to use student information for purposes irrelevant to her needs assessment duty. *Id.* at 13.

That same month, Perryton High School administrators complained about the plan Plaintiff developed. *Id.* This plan involved fundamental changes to the special education program and schedules for students and staff. *Id.* Soon after, Defendant Gomez-Rocque promulgated a "consent for services" form ("Rascon Form") campus administrators were required to sign before Plaintiff could implement her recommendations. *Id.* Defendant Gomez-Rocque designed and initiated use of the Rascon Form to ensure campus administrators agreed on the scope of services to be provided. *Id.*

On February 22, 2021, Defendants Mireles and Gomez-Rocque met with Plaintiff to discuss concerns about Plaintiff's job performance. *Id.* The meeting followed complaints from administrators across *multiple* campuses, all of which requested Plaintiff not provide services at their campuses. *Id.* at 14. The parties discussed eliminating Plaintiff's behavioral support

3

job duties. *Id.* But no changes were made, and Plaintiff's contract remained intact — giving her an additional year to improve her performance. *Id.*

In April 2021, Plaintiff accepted a position with Prosper Independent School District as a campus behavior specialist. *Id.* Plaintiff did not inform Defendant Perryton ISD she would need to resign from her position until the first week of July 2021. *Id.* On April 13, 2021, Plaintiff sued Defendants for violations of: (1) Section 504 of the Rehabilitation Act, 29 U.S.C. § 79; and (2) Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.* Defendants now move for summary judgment on all of Plaintiff's claims.

### LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if its existence or non-existence "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "[T]he substantive law will identify which facts are material." *Id.* at 248. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant must inform the court of the basis of the motion and show from the record that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

When reviewing summary-judgment evidence, the court must resolve all reasonable doubts and draw all reasonable inferences in the light most favorable to the non-movant. *Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). A court cannot make a credibility determination

when considering conflicting evidence or competing inferences. *Anderson*, 477 U.S. at 255. If some evidence supports a disputed allegation, so that "reasonable minds could differ as to the import of the evidence," the court must deny the motion. *Id.* at 250.

ANALYSIS

Title II of the ADA provides "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Like Title II, Section 504 provides that no qualified individual with a disability "shall solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

"The ADA and the Rehabilitation Act generally are interpreted *in pari materia*." *Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011). Each is "enforceable through an implied private right of action." *Id.* at 224. And each is analyzed under the *McDonnell Douglas* three step burden-shifting framework requiring: (1) a plaintiff must establish a prima facie case; (2) a defendant must then put forth a legitimate, nondiscriminatory reason for the employment action; and (3) the plaintiff must then prove the defendant's proffered reason is pretextual. *See Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 316–17 (5th Cir. 2007); *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1121–22 (5th Cir. 1998).

A. **Plaintiff Fails to Establish a Prima Facie Case of Retaliation**

Defendants argue Plaintiff cannot establish a prima facie case of retaliation under Title II and Section 504 because Plaintiff's evidence is based on her own "subjective beliefs," rather than a genuine issue of material fact. ECF No. 42 at 14–15. The prima facie elements of an unlawful

retaliation claim under Title II and Section 504 are essentially the same. *See Feist v. Louisiana*, 730 F.3d 450, 454 (5th Cir. 2013) (Title II); *Calderon v. Potter*, 113 F. App'x 586, 592 & n.1 (5th Cir. 2004) (per curiam) (Section 504). To establish a prima facie case of retaliation, a plaintiff must show: (1) she engaged in "protected activity"; (2) her employer took an "adverse employment action" against her; and (3) a "causal connection" existed between the "adverse employment action" and "protected activity." *Calderon*, 113 F. App'x at 592 & n.1.

    1. <u>Plaintiff engaged in protected activity.</u>

The first prong requires Plaintiff to show she engaged in a "protected activity." Section 504 incorporates the standards used to determine employment discrimination under Title I (42 U.S.C. §§ 12111 *et seq.*), Sections 501–504, and 510 (42 U.S.C. §§ 12201–04, 12210) of the ADA. *See* 29 U.S.C. § 794(d). Section 12203 of the ADA prohibit retaliation and coercion against individuals engaged in ADA-protected conduct.

> **(a) Retaliation**
> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.
>
> **(b) Interference, coercion, or intimidation**
> It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

Section 504 also incorporates the remedies, procedures, and rights set forth in the Civil Rights Act of 1964's Title VI (42 U.S.C. § 2000d *et seq.*) and Section 706(e)(3) of Title VII (42 U.S.C. § 2000e-5) applying to claims of discrimination in compensation. *See* 29 U.S.C. § 794a(a)(2).

Plaintiff alleges she engaged in protected conduct by: (1) "[a]dvising and directing that Latham file a report with DFPS after Latham witnessed [Defendant] Cates dragging a student with

6

a disability across the floor of the school and into a classroom"; (2) "[a]dvocating during a public school board meeting that the incident should be investigated in the best interest of the student; and/or" (3) "[a]dvocating, over [Defendant] Cates' opposition, that the student with special needs, M.R., be permitted to return to campus from homebound status because it was in his best interest." ECF No. 48 at 9–10.[1] Defendants do not argue Plaintiff did not engage in a "protected activity." Instead, Defendants focus on the legality of their own actions. *See generally* ECF No. 42.

"An individual engages in protected activity under the ADA when he 'oppose[s] any act or practice made unlawful by [the ADA].'" *Girasole v. Caliber Home Loans, Inc.*, No. 3:21-CV-01560-X, 2022 WL 3081576, at *2 (N.D. Tex. Aug. 3, 2022) (quoting *St. John v. Sirius Sols., LLLP*, 299 F. App'x 308, 309 (5th Cir. 2008)) (alteration in original). "The individual need not ultimately be correct about the unlawfulness of the activity in question." *Id.* "Common examples of protected activities are formal complaints of discrimination or reporting a public school's failure to provide a free, appropriate public education to students with disabilities." *Huber v. Blue Cross & Blue Shield of Fla., Inc.*, No. 20-3059, 2022 WL 1528564, at *6 (E.D. La. May 13, 2022); *see also Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 551 (7th Cir. 2017) ("Protected activities are those statutorily protected under the ADA, including opposing or complaining about discrimination based on disability."). Based on the actions Plaintiff alleges, the Court **FINDS** Plaintiff engaged in "protected activity."

---

[1] The Court acknowledges Plaintiff's Response characterizes her former Title II claim as a Title VII claim under the Civil Rights Act of 1964. *See* ECF No. 48 at 9 (citing 42 U.S.C. § 2000e-3 as 42 U.S.C. § 2000e-2). Recognizing that the Rehabilitation Act and the ADA are interpreted *in pari materia* and Defendants' acknowledgement that the method of analysis for retaliation claims is the same under Title VII as applied to claims under Section 504 and the ADA, the Court construes Plaintiff's Title VII claim in her Response as a retaliation claim under Title II and Section 504. *See* ECF No. 42 at 15 n.2.

2. <u>Defendants did not take "adverse employment action" against Plaintiff.</u>

The second prong requires Defendant to take "adverse employment action" against Plaintiff. Plaintiff alleges Defendants took seven "adverse employment actions" against her. To prove an "adverse employment action" occurred, Plaintiff must show "that a reasonable employee would have found the challenged action materially adverse." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

"Materially adverse" means the action at issue would have dissuaded a reasonable worker from engaging in the protected conduct because it produces "injury or harm." *Id.* at 67–68. Materially adverse employment decisions include "discharges, demotions, refusals to hire, refusals to promote, and reprimands." *Juarez v. Aguilar*, 666 F.3d 325, 332 (5th Cir. 2011). But trivial harms such as "petty slights, minor annoyances and simple lack of good manners" do not constitute materially "adverse employment actions." *Burlington N.*, 548 U.S. at 68. "Even taken in a light most favorable to [the nonmovant], allegations of unpleasant work meetings, verbal reprimands, improper work requests, and unfair treatment do not constitute actionable adverse employment actions as discrimination or retaliation." *King v. Louisiana*, 294 F. App'x 77, 85 (5th Cir. 2008).

a. *Defendant did not take "adverse employment action" against Plaintiff by declining to promote her to assistant principal.*

Plaintiff alleges Defendants denied her the assistant principal position because she reported an incident involving Defendant Cates and a disabled student. ECF No. 48 at 10–11. In June 2019, Wright Elementary School recommended Plaintiff for the position of assistant principal — a position Plaintiff ultimately failed to obtain.[2] ECF No. 48 at 11–12.

---

[2] At this time, Defendants Mireles and Gomez-Roque were not yet employed by Defendant Perryton ISD, and Defendant Cates was not involved in Wright Elementary School's hiring decisions. ECF No. 42 at 17.

To earn a principal certificate issued by the State Board of Educator Certification, Texas law requires an educator to complete an approved principal preparation program and pass the appropriate exam. 19 TEX. ADMIN. CODE § 241.20. A candidate seeking certification cannot retake the exam more than four times, absent good cause. *Id.* § 230.21. Plaintiff failed the exam *five times* and was, therefore, ineligible to take the exam again. ECF No. 42 at 17. Defendants claim Plaintiff was not hired for this reason.

Plaintiff argues Defendants' "lack of certification" reason is pretext because a school district may assign an educator to perform the duties of an assistant principal under a teacher contract while the educator works to complete state-law requirements to become a principal. ECF No. 48 at 11. Plaintiff notes Defendant Perryton ISD has hired assistant principals who have failed to pass the principal exam multiple times and remain uncertified. *Id.* Plaintiff — however — cannot point to another candidate for the assistant principal position who has *failed the principal certification five times* and, therefore, is disqualified from obtaining the relevant certification. ECF No. 48 at 11. Defendants did not *refuse* to promote Plaintiff to assistant principal; they *could not* promote Plaintiff to assistant principal. Moreover, Plaintiff's claim of adverse retaliatory action is weakened by the fact that Defendants *promoted* Plaintiff to district behavior support services coordinator. ECF No. 42 at 18. Accordingly, the Court **FINDS** Defendants did not take "adverse employment action" against Plaintiff by declining to promote her to a position for which she was disqualified — and perhaps, by extension, unqualified — under Texas law.

  b. *Defendant did not take "adverse employment action" against Plaintiff in any other of the six manners alleged.*

*First*, Plaintiff claims Defendants took an "adverse employment action" by excluding her "from working with the very students she was hired to serve and [from] collaboration with her colleagues in order to provide those services." ECF No. 1 at 9. As district behavior support services

9

coordinator, Plaintiff's core employment role was to train and model behavior interventions for teachers to implement with students. ECF No. 42 at 12. Plaintiff was not hired to provide direct services to students or intervene in helping students make educational decisions. *Id.* at 12; ECF No. 43 at 95–97. But even if she was, changes in employment duties that do not alter core employment criteria are not "adverse employment actions." *See Williams v. Barnhill's Buffet Inc.*, 290 F. App'x 759, 762 (5th Cir. 2008) (per curiam); *Prew v. Llano Indep. Sch. Dist.*, No. A-13-CA-144-SS, 2013 WL 3994188, at *3 (W.D. Tex. Aug. 2, 2013). Because Plaintiff's core employment role remained the same during her tenure as a district administrator, Plaintiff fails to allege an "adverse employment action."

*Second*, Plaintiff claims Defendant took an "adverse employment action" by imposing "restrictions and requirements prior to servicing students with disabilities that are not imposed on any other instructional coach, including the requirement to obtain written consent before servicing a student at certain campuses." ECF No. 1 at 9. In October 2020, Defendant Gomez-Rocque and Plaintiff the Rascon Form in response to complaints from campus administrators that Plaintiff continually acted beyond the scope of her job duties. ECF No. 42 at 19. Plaintiff alleges the Rascon Form's creation constitutes an adverse action because it restricts her ability to serve students with disabilities. *Id.* But again, alterations in employment duties do not constitute actionable "adverse employment actions." *See Williams*, 290 F. App'x at 762 ("An employee does not suffer a tangible employment action when a supervisor merely 'change[s] her work schedule and ask[s] her to perform tasks which she had not previously been asked to perform.'" (quoting *Watts v. Kroger Co.*, 170 F.3d 505, 510 (5th Cir. 1999))).

*Third*, Plaintiff claims "false accusations by [Defendant] Cates that [Plaintiff] was using school property for personal use and that she breached student confidentiality" constituted

10

"adverse employment actions." ECF No. 1 at 9. As for the first of these allegedly false accusations, Plaintiff agrees she used a school printer for personal business. *See* ECF No. 43 at 29–31. Therefore, Defendants rightly assert Defendant Cates accurately reported Plaintiff's misconduct. ECF No. 42 at 20. And as for the second, Defendant Cates believed it was inappropriate for Plaintiff to use student information for a purpose other than her assigned duty to complete the needs assessment. *Id.* Defendant Cates neither served as Plaintiff's supervisor nor was Plaintiff reprimanded for Defendant Cates' report. ECF No. 42 at 20–21. Defendant Cates' accusations are akin to "verbal reprimands, improper work requests, [or] unfair treatment," which do not constitute actionable "adverse employment actions." *King*, 294 F. App'x at 85 (internal marks omitted).

*Fourth*, Plaintiff claims "threats by [Defendant] Cates that [Plaintiff] would be reported to the Texas Education Association and lose her teaching certification" constituted "adverse employment actions." ECF No. 1 at 9. Empty, verbal threats failing to cause injury are not "adverse employment actions." *Cf. Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 708 (5th Cir. 1997).

*Fifth*, Plaintiff claims "threats that [Plaintiff's] contract would be amended to exclude her role as behavioral specialist, would not be renewed and/or that she would be reassigned to an undesirable position within the district" constituted "adverse employment actions." ECF No. 1 at 9. In February 2021, Defendants Mireles and Gomez-Rocque met with Plaintiff to address complaints related to Plaintiff's job performance. ECF No. 42 at 21. Despite these complaints, Defendants did not terminate Plaintiff. *Id.* at 22. Instead, Plaintiff retained her job for the next school year. *Id.* Defendants — however — clarified performance expectations for that year. *Id.* If placing an employee on a performance improvement plan is not an "ultimate employment decision" constituting an "adverse employment action," then discussing job-related complaints with Plaintiff is not either. *Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 824 (5th Cir. 2019).

*Sixth*, Plaintiff claims "since the time [Defendant Perryton ISD] received notification that [Plaintiff] retained counsel, unlawful discrimination and/or retaliation and imposition of additional work directives that cannot reasonably be accomplished" have occurred and constitute "adverse employment actions." ECF No. 1 at 9. Defendants assert Plaintiff is unable to identify "additional work directives that were not consistent with her job description, which Plaintiff assisted in developing." ECF No. 42 at 22. Plaintiff only identifies minor requests for assistance. For instance, being asked to help with reading instruction twice a week and to complete "Rage to Reason" behavioral program training for certain staff at Williams Intermediate. *Id.* at 23. These directives did not constitute "*adverse* employment actions." *See Burlington N.*, 548 U.S. at 68. Again, an "adverse employment action" must be "materially adverse." That is, it must dissuade a reasonable worker from engaging in protected conduct because the action produces "injury or harm." *Id.* at 67–68. Trivial harms — such as "petty slights" and "minor annoyances" — do not constitute materially "adverse employment actions." *Id.* at 68; *see also King*, 294 F. App'x at 85 ("[A]llegations of . . . improper work requests . . . do not constitute actionable adverse employment actions as discrimination or retaliation.").

    c. *Defendant did not take "adverse employment action" against Plaintiff in any other of the six manners alleged.*

The third prong requires Plaintiff prove a "causal connection" existed between the "adverse employment action" and "protected activity." Even if the Court were to find Defendants' actions prevented Plaintiff from engaging in "protected activity," Plaintiff cannot prove a "causal connection." To prove a "causal connection," Plaintiff must evidence more than a subjective belief that the challenged conduct was retaliatory. *Gollas v. Univ. of Tex. Health Sci. Ctr.*, 425 F. App'x 318, 321 (5th Cir. 2011). Referencing "conclusory allegations, speculation, and unsubstantiated

assertions" is insufficient to survive summary judgment. *Id.* (quoting *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002)).

Plaintiff argues Defendants took the allegedly adverse actions to punish Plaintiff for counseling Latham to report Defendant Cates' conduct to DFPS. ECF No. 1 at 3. Defendants respond the temporal proximity of Plaintiff's and Defendants' actions cannot support a "causal connection." ECF No. 42 at 23. The Court agrees with Defendants. More than a year passed between Plaintiff's report and Defendants' actions at issue. *See Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 472 (5th Cir. 2002). The evidence supplied does not demonstrate a causal link and, in fact, Plaintiff received a promotion after making the relevant report. Accordingly, the Court **FINDS** no "causal connection" exits between Plaintiff's actions and Defendants' actions.

### B. Because Plaintiff Fails to Establish a Prima Facie Case of Retaliation, the Court Need Not Address the Other *McDonnell Douglas* Factors

Having found Plaintiff fails to establish a prima facie case of retaliation, the Court does not directly address whether Defendants provide legitimate, nondiscriminatory reasons for the employment actions or whether Plaintiff can prove such reasons are pretextual. The Court notes — however — Defendants have provided myriad, ample justifications for their actions.

### C. Defendants Mireles, Cates, and Gomez-Rocque Are Each Individually Entitled to Summary Judgment

"Actions for damages against a party in his official capacity are, in essence, actions against the governmental entity of which the officer is an agent." *Familias Unidas v. Briscoe*, 619 F.2d 391, 403 (5th Cir. 1980). Such actions are "redundant and unnecessary because any disputed issues that must be resolved in conjunction with the official capacity claims are the same as those requiring resolution in the claims against the school district." *Doe v. Rains Indep. Sch. Dist.*, 865 F. Supp. 375, 378 (E.D. Tex. 1994), *rev'd on other grounds*, 66 F.3d 1402 (5th Cir. 1995) and 76 F.3d 666 (5th Cir. 1996).

Plaintiff raises Title II and Section 504 claims against all Defendants generally. Because Plaintiff's claims against district employees mirror those raised against Defendant Perryton ISD, resolution of the claims against Defendant Perryton ISD will also resolve the claims against the district employees. The Court therefore **FINDS** summary judgment in favor of the district employees in their official capacities to be appropriate.

And if Plaintiff intends to bring her claims against the district-employee Defendants in their personal capacities, Plaintiff must confront qualified immunity. Qualified immunity protects a government official if his conduct was objectively reasonable under existing federal law. *McClendon v. City of Columbia*, 305 F.3d 314, 327 (5th Cir. 2002) (en banc). Qualified immunity shields government officials from liability for performing their discretionary functions, unless a reasonable person would have known that an official's conduct violated "clearly established statutory or constitutional rights." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Because Plaintiff is unable to establish a prima facie case of retaliation, she does not show a violation of clearly establish law and fails to overcome Defendants' assertion of qualified immunity. Accordingly, the Court **FINDS** summary judgment in favor of the district employees in their personal capacities to be appropriate.

CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' Motion.

**SO ORDERED.**

August 19, 2022

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE